UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| JASON A. MAHE,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>DAVID RIVAS, *et al.*,<br><br>　　　　　　　　Defendants. | Case No. 3:22-CV-00536-MMD-CLB<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1]<br><br>[ECF Nos. 1-2, 4] |

　　　　This case involves a civil rights action filed by Plaintiff Jason Mahe ("Mahe") against Defendants David Rivas ("Rivas"), Helen Parks ("Parks"), and the Nevada Department of Corrections ("NDOC") (collectively referred to as "Defendants"). Currently pending before the Court is Mahe's motion for emergency injunction, (ECF No. 1-2), and Mahe's motion for temporary restraining order, (ECF No. 4), (collectively referred to as "motions for injunctive relief"). Defendants responded, (ECF No. 14), and Mahe replied. (ECF No. 18[2].) For the reasons stated below, the Court recommends that the motions for injunctive relief, (ECF Nos. 1-2, 4), be denied.

**I.　　FACTUAL BACKGROUND**

　　　　Mahe is an inmate currently in the custody of NDOC and is currently housed at Northern Nevada Correctional Center ("NNCC"). Mahe alleges that he suffered a traumatic brain injury when he was shot in the head with a gun. (ECF No. 5 at 4.) Due to these injuries, Mahe alleges he suffers from a seizure disorder. (*Id.*) Mahe alleges that, in 2020, his anti-seizure medication was "cut off cold turkey." (*Id.*) He was placed on the anti-seizure medication Lyrica but was later removed from that medication due to an

---

[1]　　This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2]　　ECF No. 18 was titled "Rebuttal to A.G.'s Motion," however, this document is properly described as a reply.

NDOC decision not to supply that medication. (*Id.*) Defendants allege that Mahe was found to be diverting his prescription of Gabapentin. (ECF No. 16 at 9, ECF No. 16-4.) Defendants claim Lyrica and Gabapentin are widely abused and that NDOC provides many other alternative medications. (ECF No. 14 at 8.) Mahe also reported to a physician that he had three seizures per week while on Lyrica. (ECF No. 16-2 at 2 (sealed).) Mahe has been prescribed varying anti-seizure medications while in custody, based on both his own representations of his condition and decisions made by medical professionals. (*See* ECF Nos. 16-1, 16-2, 16-3, 16-4 (sealed).) Among other things, Mahe alleges that being deprived of Lyrica violates his Eighth Amendment rights. (*See* ECF No. 4.)

## II.    PROCEDURAL HISTORY

On December 5, 2022, Mahe submitted a civil rights complaint under 42 U.S.C. § 1983 together with a motion for an emergency injunction. (ECF Nos. 1-1, 1-2, 4, 6.) On January 19, 2023, the District Court entered a screening order on Mahe's complaint, allowing Mahe to proceed on his claim for Eighth Amendment deliberate indifference to serious medical need for Lyrica medication to treat his seizure condition against Defendants David Rivas and Helen Parks. (ECF No. 5 at 9.) The District Court also referred the emergency motions for injunctive relief to the undersigned. (*Id.* at 10.)

On January 20, 2023, the Court ordered Defendants to respond to Mahe's motions for preliminary injunction and temporary restraining order by February 10, 2023. (ECF No. 7.) NDOC filed a timely response on February 10, 2023, (ECF Nos. 14, 16),[3] arguing that Mahe's motions should be denied for failure to successfully prove the elements of a preliminary injunction. Mahe responded on February 21, 2023, (ECF No. 18).

## III.   LEGAL STANDARD

Generally, the purpose of a preliminary injunction or temporary restraining order is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the

---

[3]    ECF No. 16 consists of exhibits to ECF No. 14 filed under seal.

2

action are ultimately determined. *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). A preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citations omitted). Instead, in every case, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008) (quotation marks and citation omitted). The instant motion requires the Court determine whether Johnson has established the following: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id*. at 20 (citations omitted).

Before Winter, courts in the Ninth Circuit applied an alternative "sliding-scale" test for issuing a preliminary injunction that allowed the movant to offset the weakness of a showing on one factor with the strength of another. *See Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011); *see also Beardslee v. Woodford*, 395 F.3d 1064, 1067 (9th Cir. 2005). In *Winter*, the Supreme Court did not directly address the continued validity of the Ninth Circuit's sliding-scale approach to preliminary injunctions. *See Winter*, 555 U.S. at 51; *see also Alliance*, 632 F.3d at 1131. The Ninth Circuit has since found that post-Winter, this circuit's sliding-scale approach, or "serious questions" test survives when applied as part of the four-element Winter's test. *Alliance*, 632 F.3d at 1131-32. "In other words, 'serious questions going to the merits' and a hardship balance that tips sharply towards the [Plaintiff] can support issuance of an injunction, assuming the other two elements of the Winter test are also met." *Id*. (citations omitted). The portion of the sliding-scale test that allowed injunctive relief upon the possibility, as opposed to likelihood, of irreparable injury to the Johnson, was expressly overruled by *Winter*. *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009).

An even more stringent standard is applied where mandatory, as opposed to prohibitory preliminary relief is sought. The Ninth Circuit has noted that although the same general principles inform the court's analysis, "[w]here a party seeks mandatory

preliminary relief that goes well beyond maintaining the status quo pendente lite, courts should be extremely cautious about issuing a preliminary injunction." *Martin v. International Olympic Committee*, 740 F.2d 670, 675 (9th Cir. 1984); *see also Committee of Cent. American Refugees v. Immigration & Naturalization Service*, 795 F.2d 1434, 1442 (9th Cir. 1986). Thus, an award of mandatory preliminary relief is not to be granted unless both the facts and the law clearly favor the moving party and extreme or serious damage will result. *See Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (quoting *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1979)).

Finally, the Prison Litigation Reform Act (PLRA) mandates that prisoner litigants must satisfy additional requirements when seeking preliminary injunctive relief against prison officials:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. §3626(a)(2). Thus, section 3626(a)(2) limits the Court's power to grant preliminary injunctive relief to inmates. *Gilmore v. People of the State of California*, 220 F.3d 987, 998 (9th Cir. 2000). "Section 3626(a)(2) . . . operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators – no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Id*. at 999.

## IV.   DISCUSSION

Mahe is requesting a mandatory, as opposed to prohibitory, injunction in arguing that the Court should mandate the NDOC to provide Mahe with specific prescription drugs for his seizure disorder. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) ("This relief is treated as a mandatory injunction, because it 'orders a responsible party to 'take action.'") (citation omitted). Therefore, the standard for granting the mandatory preliminary injunction requested here is higher than for a

prohibitory injunction and will not to be granted unless both the facts and the law clearly favor the moving party and extreme or serious damage will result. *See Garcia*, 786 F.3d at 740 (citations omitted). The Court will address whether the facts and the law clearly favor a showing of deliberate indifference to serious medical needs and whether extreme or serious damage will result to Mahe if a mandatory injunction is not granted.

### A.   Likelihood of Success on Eighth Amendment Claim

The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency" by prohibiting the imposition of cruel and unusual punishment by state actors. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotation omitted). The Amendment's proscription against the "unnecessary and wanton infliction of pain" encompasses deliberate indifference by state officials to the medical needs of prisoners. *Id*. at 104 (internal quotation omitted). It is thus well established that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id*. at 105.

Courts in Ninth Circuit employ a two-part test when analyzing deliberate indifference claims. The plaintiff must satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (internal quotation omitted). First, the objective component examines whether the plaintiff has a "serious medical need," such that the state's failure to provide treatment could result in further injury or cause unnecessary and wanton infliction of pain. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Serious medical needs include those "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell*, 763 F.3d at 1066 (internal quotation omitted).

Second, the subjective element considers the defendant's state of mind, the extent of care provided, and whether the plaintiff was harmed. "Prison officials are deliberately

indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (internal quotation omitted). However, a prison official may only be held liable if he or she "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1050, 1057 (9th Cir. 2004). The defendant prison official must therefore have actual knowledge from which they can infer that a substantial risk of harm exists, and also make that inference. *Colwell*, 763 F.3d at 1066. An accidental or inadvertent failure to provide adequate care is not enough to impose liability. *Estelle*, 429 U.S. at 105–06. Rather, the standard lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other. . ." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). Accordingly, the defendants' conduct must consist of "more than ordinary lack of due care." *Id*. at 835 (internal quotation omitted).

Moreover, the medical care due to prisoners is not limitless. "[S]ociety does not expect that prisoners will have unqualified access to health care…." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Accordingly, prison officials are not deliberately indifferent simply because they selected or prescribed a course of treatment different than the one the inmate requests or prefers. *Toguchi*, 391 F.3d at 1058. Only where the prison officials' "'chosen course of treatment was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to the prisoner's health,'" will the treatment decision be found unconstitutionally infirm. *Id*. (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). In addition, it is only where those infirm treatment decisions result in harm to the plaintiff—though the harm need not be substantial—that Eighth Amendment liability arises. *Jett*, 439 F.3d at 1096.

Again, as Mahe requests a mandatory preliminary injunction, the motion will not be granted unless both the facts and the law *clearly* favor Mahe. *See Garcia*, 786 F.3d at 740 (citations omitted). The Court will address whether the facts and law clearly show that Mahe had an objectively serious medical need and that the Defendants were deliberately indifferent to that need.

### i. Objective Standard

While reserving the right to bring further arguments and defenses, Defendants do not necessarily dispute that Mahe has a serious medical need. (ECF No. 14 at 8.) Facts in the record submitted by both parties are sufficient to establish at this juncture that Mahe does have a seizure condition. A seizure disorder is one that a reasonable doctor or patient would find important and worthy of comment or treatment and would significantly affect an individual's daily activities. *Colwell*, 763 F.3d at 1066. The Court finds that a seizure disorder is a serious medical need and therefore Mahe has satisfied the objective prong of the deliberate indifference analysis.

### ii. Subjective Standard

Turning to the subjective prong, the crux of the issue presented by this motion is that Mahe disagrees with the medical opinion of the physician to prescribe him certain medication for his seizures that is not the medication he believes he should be prescribed. (*See* ECF Nos. 1-2, 4, 18.) To establish that a difference of opinion amounts to deliberate indifference, the prisoner "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances" and "that they chose this course in conscious disregard of an excessive risk to [the prisoner's] health." *See Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996), overruled in part on other grounds by *Peralta v. Dillard*, 744 F.3d 1076, 1083 (9th Cir. 2014)); *see also Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 679 (9th Cir. 2021) ("Our cases make clear that prison officials violate the Constitution when they 'deny, delay or intentionally interfere' with needed medical treatment. … . The same is true when prison officials choose a course of treatment that is 'medically unacceptable under the circumstances.'") (internal citations omitted)), *cert. denied sub nom. San Diego Cnty. v. Sandoval*, 142 S. Ct. 711 (2021). Typically, a difference of opinion between the physician and the prisoner concerning the appropriate course of treatment does not amount to deliberate indifference to serious medical needs. *See Edmo v. Corizon, Inc.*, 935 F.3d 757, 786 (9th Cir. 2019); *Hamby v. Hammond,* 821 F.3d 1085, 1092 (9th Cir. 2016); ("Eighth Amendment doctrine makes clear that '[a]

difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference.'" (citation omitted)); *Toguchi v. Chung*, 391 F.3d 1058 (9th Cir. 2004); *Franklin v. Or., State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981). "But that is true only if the dueling opinions are medically acceptable under the circumstances." *Edmo*, 935 F.3d at 786. Prison officials are not deliberately indifferent simply because they selected or prescribed a course of treatment different than the one the inmate requests or prefers. *Toguchi*, 391 F.3d at 1058.

NDOC provides reports from various medical consultations with Mahe regarding medications to manage his seizure disorder. In March of 2022, Dr. Pednekar reports that Mahe stated only the medication clonazepam has helped control his seizures. A December 2, 2022, report by Dr. Benson describes that Mahe was diverting, "i.e. not using," his previously-prescribed Gabapentin medication. (ECF No. 16 at 9, ECF No. 16-4.) The report also states that Mahe was on Lyrica, which is no longer authorized by NDOC. (ECF No. 16-4.) Dr. Benson also describes another medication Mahe was prescribed, Tegretol, but writes that Mahe described a depression/mood disorder caused by this medication. (*Id.*) Dr. Benson concludes with a prescription of Keppra until a new prescription of Cymbalta became available and scheduled a follow up. (*Id.*)

Here, there is no evidence that Mahe is being prescribed seizure medication with in a medically unacceptable manner or with a conscious disregard for Mahe's health. The reports provided show that medical providers are trying to work with Mahe to find a solution for his seizures. As opposed to showing deliberate indifference to serious medical needs, the record shows repeated consultations in search of the correct medication. In fact, it seems prudent for the physician to change Mahe's prescription if he reported having three seizures per week on the Lyrica. (ECF No. 16-2 at 2 (sealed).) Regardless, prison officials are not deliberately indifferent simply because they selected or prescribed a course of treatment different than the one the inmate requests or prefers. *Toguchi*, 391 F.3d at 1058.

### B. Irreparable Harm

Finally, in the context of a mandatory preliminary injunction, Mahe must also show that extreme or very serious harm will occur if an injunction is not issued. *Anderson*, 612 F.2d at 1115 (citations omitted) (emphasis added). As such, "[t]here must be a 'sufficient causal connection' between the alleged irreparable harm and the activity to be enjoined and showing that 'the requested injunction would forestall' the irreparable harm qualifies as such a connection." *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803, 819 (9th Cir. 2018) (citing *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 981–82 (9th Cir. 2011)).

As discussed above, the issue here is again that Mahe disagrees with the course of treatment prescribed by the physicians at NDOC. However, there is no evidence that Mahe is experiencing more harm than he would if he had his preferred course of treatment. Mahe is not being deprived of <u>all</u> seizure medication. Rather, he is not being prescribed the medication that he prefers. Specifically, Mahe requests that he be placed back on a prescription of Lyrica, a medication on which he reported having seizures three times a week. (ECF No. 4 at 7, ECF No. 16-2 at 3 (sealed).)

As to the specific issue of controlling Mahe's seizures completely, Dr. Timothy Doyle wrote in his report of a consultation with Mahe that "[Mahe] does understand however that many patients with a secondary seizure disorder may not achieve full control of their epilepsy." (ECF No. 16-1 at 2 (sealed).) It is therefore speculative to assume that being prescribed any one seizure medication will prevent Mahe from all harmful effects of his seizure disorder. Therefore, the causal connection between the alleged irreparable harm and the relief sought is insufficient. *Nat'l Wildlife Fed'n.*, 886 F.3d at 819 (citations omitted). Due to the high standard for showing irreparable harm in the absence of a mandatory preliminary injunction, the Court finds that Mahe does not meet his burden.

### V. CONCLUSION

For good cause appearing and for the reasons stated above, the Court recommends that Mahe's motions for injunctive relief, (ECF Nos. 1-2, 4), be denied.

The parties are advised:

1.  Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.  This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## VI. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Mahe's motions for injunctive relief, (ECF Nos. 1-2, 4), be **DENIED**.

DATED: March 7, 2023 .

_____
UNITED STATES MAGISTRATE JUDGE